## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In Re: Huckleberry Partners
LLC

**ADAM KANTER,**

        **Appellant,**

**v.**                                **Case No: 6:23-cv-1849-PGB**

**MARK C. HEALY, and**
**HUCKLEBERRY PARTNERS**
**LLC,**

        **Appellees.**

_____/

## **ORDER**

This cause comes before the Court without oral argument[1] upon Appellant

Adam Kanter's ("**Mr. Kanter**") Corrected Initial Brief. (Doc. 21 (the "**Initial**

**Brief**")). Appellee Huckleberry Partners LLC ("**Debtor Huckleberry**")[2] has

filed a Response Brief. (Doc. 26 (the "**Response Brief**")). Mr. Kanter has not filed

---

[1]   Although Mr. Kanter requests oral argument in this matter, the Court has examined the briefing and records and finds that "the facts and legal arguments are adequately presented" therein, and the "Court's decisional process would not be significantly aided by oral argument." (Doc. 21, p. 7); *see* FED. R. BANKR. P. 8019(b)(3).

[2]   The Court notes that Debtor Huckleberry's Liquidating Agent, Mark C. Healy (the "**Liquidating Agent**"), was initially an Appellee in this matter. (*See* Doc. 1). However, on January 10, 2024, the Liquidating Agent filed a Notice informing this Court that the Bankruptcy Court had discharged him of his duties, including as to the instant appeal. (Doc. 22). Additionally, while H. James Herborn, III ("**Herborn**") was a party to the settlement at issue, Mr. Kanter did not name Herborn as a party to this appeal. (Doc. 1, pp. 3–4). Herborn has not filed a motion to intervene with the instant Court, and the time to do so has passed. *See* FED. R. BANKR. P. 8013(g). Accordingly, at present, Debtor Huckleberry is the sole Appellee in this matter.

a reply to the Response Brief, and the time to do so has passed. After reviewing the record and briefing, the Bankruptcy Court's Order Granting Motion to Approve Compromise of Controversy between Liquidating Agent and H. James Herborn III (Doc. 11-2 (the "**Settlement Approval Order**")) is affirmed.

## I.   BACKGROUND

In this appeal, Mr. Kanter challenges the Bankruptcy Court's approval of a compromise between Debtor Huckleberry; its Liquidating Agent in the bankruptcy action; and Herborn, a creditor in the bankruptcy action who also holds a membership interest in Debtor Huckleberry. (Doc. 21, p. 8).

### A.   Brief History of Relevant Litigation

Debtor Huckleberry is a limited liability company ("**LLC**") that was organized in 2005 by three members: Mr. Kanter; his then-wife, Stephanie Kanter ("**Mrs. Kanter**"); and Herborn. (*Id.*). Debtor Huckleberry was organized to "acquire, build, own and operate" a shopping center. (*Id.*). According to the Initial Brief, at the time Debtor Huckleberry was organized, Mr. Kanter held a 35% membership interest, Mrs. Kanter held a 35% membership interest, and Herborn held a 30% membership interest.[3] (*Id.*).

---

[3]   The precise breakdown of the three members' respective interests in Debtor Huckleberry has been the subject of dispute in myriad venues, as has the question of whether Mr. Kanter and Mrs. Kanter (collectively, "**M/M Kanter**") held their interests individually or as tenants by the entirety. (*See, e.g.*, Doc. 21, p. 8; Doc. 26, p. 8; Doc. 11-15, pp. 1–2; Doc. 11-228, ¶¶ 52–55). Mr. Kanter represents that, ultimately, when a Final Judgment was entered in divorce proceedings dissolving M/M Kanter's marriage, Mr. Kanter was awarded Mrs. Kanter's membership interest in Debtor Huckleberry. (Doc. 21, p. 11).

In April 2015, Mr. Kanter initiated what ultimately became protracted divorce proceedings against Mrs. Kanter. (*Id.* at pp. 9, 11). Shortly after Mr. Kanter initiated these proceedings, in February 2016, Mr. Kanter was named as a Defendant in a lawsuit filed by Mrs. Kanter and Herborn in state court in Orange County, Florida (the "**State Court Action**"). (*Id.* at p. 9). Therein, Herborn and Mrs. Kanter alleged that Mr. Kanter had "unilaterally taken numerous unauthorized and wrongful actions regarding Huckleberry Partners . . . since its formation."[4] (Doc. 11-228, ¶ 15). Specifically, Herborn and Mrs. Kanter alleged, *inter alia*, that Mr. Kanter had caused Debtor Huckleberry to make improper distributions of money to Mr. Kanter's own accounts and had destroyed financial records to hide these distributions. (*Id.*). The underlying complaint in the State Court Action has been amended at least five times. (*See* Doc. 11-231 (the "**operative Complaint**")).

As of the operative Complaint, filed in March of 2022, the Plaintiffs named in the State Court Action are Herborn, individually and derivatively on behalf of Debtor Huckleberry, and Debtor Huckleberry, directly, by written consent of the members. (*Id.*). The Defendants are M/M Kanter and R J Property Group, Inc. ("**RJ**"). (*Id.*). In the operative Complaint, Mrs. Kanter—like Mr. Kanter—stands accused of breaching her fiduciary duties to Debtor Huckleberry, including by

---

[4] Although Mr. Kanter's Initial Brief references the first Complaint being filed in the State Court Action in February 2016, the record citation provided by Mr. Kanter is the citation for the *First Amended Complaint*, filed in October 2017. (Doc. 21, pp. 8–9; Doc. 11-228). Consequently, here, the Court describes the allegations as they appeared in the First Amended Complaint rather than the first-filed Complaint.

"authorizing and taking excessive distributions" from Debtor Huckleberry. (*E.g.*, *id.* ¶¶ 162–63). The operative Complaint also alleges that RJ is an administratively dissolved corporation that was organized by M/M Kanter "as part of their scheme to defraud" Herborn. (*Id.* ¶¶ 9–10). The operative Complaint thus avers that RJ was "the recipient of improper transfers" made from Debtor Huckleberry. (*Id.* ¶ 10). Finally, Debtor Huckleberry is also named as a nominal Defendant in the operative Complaint. (*See generally* Doc. 11-231).

Various iterations of the complaint in the State Court Action also reference that in 2017, Mr. Kanter filed his own lawsuit against Herborn in state court in Broward County, Florida (the "**Note Case**"). (*E.g.*, Doc. 11-228, ¶ 16; Doc. 11-231, ¶ 76). In the Note Case, Mr. Kanter alleges that he holds a Grid Promissory Note (the "**Note**") executed by Herborn and that Herborn defaulted on the Note. (Doc. 11-228, pp. 57–61). In the Note Case, Mr. Kanter further asserts that Herborn had "pledged all of his interest in Huckleberry Partners, LLC . . . as collateral" for the Note. (*Id.* at p. 59). Thus, Mr. Kanter alleges that Herborn's default on the Note entitled Mr. Kanter to exercise all rights of ownership over Debtor Huckleberry following the default. (*Id.* at pp. 59–60). The Note Case remained pending as of the filing of the operative Complaint in the State Court Action. (Doc. 11-231, ¶ 76).[5]

Additionally, in November 2019, Mr. Kanter personally filed for bankruptcy. (Doc. 26, p. 9; Doc. 11-15, p. 4). The state court presiding over the State Court

---

[5] The Bankruptcy Court record indicates that the State Court Action was ultimately removed from the state court and became an adversary proceeding within the bankruptcy case. (*E.g.*, Doc. 11-27, pp. 2–3).

Action entered a Summary Judgment Order finding that, as a result of Mr. Kanter's bankruptcy, Mr. Kanter became "dissociated as a matter of law" from Debtor Huckleberry. (Doc. 26, p. 9; Doc. 11-15, p. 4). Thus, according to Debtor Huckleberry, Mr. Kanter is no longer a member of Debtor Huckleberry and "retains a purely economic interest in Debtor Huckleberry."[6] (Doc. 26, p. 9).

### B.    Debtor Huckleberry's Bankruptcy Case

In the midst of this complex legal backdrop, on June 17, 2022, Debtor Huckleberry filed its Voluntary Petition for Bankruptcy under Chapter 11 of the Bankruptcy Code. (Doc. 11-7). Herborn was the Debtor in Possession during the bankruptcy case. (Doc. 21, p. 11). As a result, Herborn filled out the Official Form 202 for Debtor Huckleberry. (*Id.*; Doc. 11-11). Therein, Herborn provided, under penalty of perjury, information regarding Debtor Huckleberry's assets and liabilities. (Doc. 11-11, p. 1). Herborn listed himself as a creditor with a $1,500,000.00 unsecured claim (the "**Herborn Claim**") due to his allegations that Mr. Kanter had taken improper distributions from Debtor Huckleberry without providing Herborn his *pro rata* share. (*Id.* at p. 14; *see* Doc. 21, p. 10). In August of 2022, Debtor Huckleberry filed a Plan of Liquidation (Doc. 11-12 (the "**Plan**")) and a Disclosure Statement (Doc. 11-13).

On September 26, 2022, Mr. Kanter filed his Objection to the Plan and Disclosure Statement. (Doc. 11-15). Therein, Mr. Kanter asserted that Herborn had

---

[6]    To the extent that Mr. Kanter disagrees with any characterizations contained within the Response Brief, Mr. Kanter was entitled to file a reply to challenge any such characterizations. FED. R. BANKR. P. 8014(c). However, Mr. Kanter declined the opportunity to do so.

been "us[ing] Debtor's revenue to fund his personal lifestyle and litigation against Kanter." (*Id.* at p. 2). Mr. Kanter noted that the Plan appointed Herborn to "pursue all causes of action on behalf of the estate," despite the fact that Herborn was a creditor and had also been personally represented by certain law firms listed as creditors (the "**Law Firm Claims**"). (*Id.* at p. 7); *see* discussion *infra* pp. 7–8. Mr. Kanter thus argued Herborn was "woefully conflicted in this role" as to such claims. (*Id.*).

On September 29, 2022, in order to resolve various objections to the Plan, including Mr. Kanter's objection thereto, Debtor Huckleberry filed a Modification to Plan of Liquidation. (Doc. 26, p. 11; Doc. 11-17 (the "**Modification**")). The Modification appointed the Liquidating Agent as a neutral third-party who would prosecute "[c]auses of [a]ction which present a conflict of interest for the Debtor." (Doc. 11-17, p. 4; *see also* Doc. 26, pp. 11–13). The Bankruptcy Court entered an Order confirming the Debtor's Plan along with the Modification. (Doc. 11-22 (the "**Confirmation Order**")). The Confirmation Order was not the subject of any appeal. (Doc. 26, p. 13).

On November 1, 2022, Mr. Kanter filed a motion for clarification regarding the Confirmation Order. (Doc. 11-23 (the "**Motion for Clarification**")). The Motion for Clarification was resolved without the Bankruptcy Court's involvement, and the Bankruptcy Court entered an agreed order thereupon. (Doc. 11-26 (the "**Agreed Order**")). The Agreed Order provided that "[t]he Debtor or the Liquidating Agent shall file any objections to claims within ninety (90) days of the

date of this [Agreed] Order." (*Id.* at p. 2). The Agreed Order was *dated* November 26, 2022, but was ultimately *entered* on November 28, 2022. (*Id.* at p. 1; Doc. 26, p. 15).

On February 25, 2023—eighty-nine days after the Agreed Order was *entered* but ninety-one days after the *date* on the Order—the Liquidating Agent filed an Objection to Herborn's claim. (Doc. 11-36 (the "**Objection to the Herborn Claim**")). Therein, the Liquidating Agent argued that any claim that resulted from Mr. Kanter's alleged improper distributions to himself would be a property right of Debtor Huckleberry rather than Herborn. (*Id.* at p. 4). Thus, the Liquidating Agent contended that Herborn lacked standing to assert the Herborn Claim. (*See id.*).

Herborn filed a response in opposition to the Objection to the Herborn Claim. (Doc. 11-133). Therein, Herborn asserted as an affirmative defense that the aforementioned objection was not timely filed under the terms of the Agreed Order (the "**Timeliness Defense**"). (*Id.* at pp. 2–3). On April 7, 2023, the Bankruptcy Court entered an Order denying Herborn's Timeliness Defense. (Doc. 11-143). On May 2, 2023, the Bankruptcy Court also denied Herborn's request for reconsideration of the aforementioned Order. (Doc. 11-151 (the "**Order Denying Reconsideration**")).

In the course of the bankruptcy proceedings, the Liquidating Agent reached settlements as to the four Law Firm Claims. (Docs. 11-145, 11-152, 11-153, 11-161). One settlement resolved a claim brought by de Beaubien, Simmons, Knight,

Mantzaris & Neal, LLP, for legal services this firm provided in the State Court Action. (Doc. 11-145, p. 2; *see* Doc. 11-27, p. 6). A second settlement resolved a claim brought by Mark A. Buckles, Esq., and Buckles Law Firm, P.L. for (1) legal services rendered in the State Court Action, and (2) additional legal services rendered to Debtor Huckleberry in myriad other legal matters in 2017 and 2018. (Doc. 11-152, p. 2). A third settlement resolved a claim asserted by Seiler, Sautter, Zaden, Rimes & Wahlbrink for legal services they provided in the State Court Action, the Note Case, an adversary proceeding filed within *Mr. Kanter's* bankruptcy case, and M/M Kanter's divorce proceedings. (Doc. 11-153, p. 2 n.1). The final settlement concerned a claim asserted by Bloodworth Law, PLLC for its representation of Debtor Huckleberry in the State Court Action (the "**Bloodworth Claim**"). (Doc. 11-120, p. 2; Doc. 11-161).

The Liquidating Agent filed four motions seeking the Bankruptcy Court's approval of the settlements of the Law Firm Claims. (Docs. 11-145, 11-152, 11-153, 11-161). Debtor Huckleberry initially objected to each of these settlements on various grounds. (Docs. 11-162, 11-163, 11-165, 11-166).

### C.   The Settlement and the Settlement Approval Order

On April 20, 2023, the Bankruptcy Court directed the Liquidating Agent, Debtor Huckleberry, and Herborn (collectively, the "**Settling Parties**") to participate in mediation. (Doc. 21, p. 13; Doc. 11-2, p. 2). On May 30, 2023, the Settling Parties mediated the various disputes between them all day and into the night. (Doc. 21, p. 13; Doc. 23-2, 30:11–14). That night, as mediation continued,

the Liquidating Agent filed an adversary proceeding against Herborn within the bankruptcy case.[7] (Doc. 11-169, p. 3). Therein, the Liquidating Agent asserted claims against Herborn for breaches of his fiduciary duty to Debtor Huckleberry, for unjust enrichment, and seeking to avoid and recover certain transfers (the "**Adversary Proceeding**"). (Doc. 11-2, p. 2).

The mediation proved successful, and the Settling Parties reached a global compromise (Doc. 11-170 (the "**Settlement**")) that included the following terms:

(1)     The Liquidating Agent would withdraw his Objection to Herborn's Claim and would pay $500,000.00 to Herborn in satisfaction thereof;

(2)     Debtor Huckleberry and Herborn would withdraw the Objections to the settlements resolving the Law Firm Claims;

(3)     The Liquidating Agent would dismiss the Adversary Proceeding against Herborn; and

(4)     Herborn would agree not to appeal or otherwise attack Debtor Huckleberry's Plan and Modification, the Confirmation Order, the Order denying Herborn's Timeliness Defense, or the Order Denying Reconsideration.

(Doc. 11-170, pp. 3–4). The Liquidating Agent filed a motion with the Bankruptcy Court seeking approval of the Settlement. (Doc. 11-169 (the "**Motion to Approve Settlement**")). Mr. Kanter objected to the aforementioned motion and Debtor

---

[7]   The Liquidating Agent later testified that the adversary proceeding was filed at 9:38 PM on the night of mediation because the deadline for initiating the proceeding would have otherwise expired if the mediation was unsuccessful. (Doc. 23-2, 68:25–69:5).

Huckleberry responded to the objection. (Docs. 11-198, 11-204, 11-274). The Bankruptcy Court held a trial on the Motion to Approve Settlement and later entered the Settlement Approval Order, which is the subject of this appeal. (Doc. 11-2).

## II.   LEGAL STANDARD

This Court has jurisdiction over this appeal from the final order of the Bankruptcy Court pursuant to 28 U.S.C. § 158. In bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its resolution of legal questions *de novo*. *Coady v. D.A.N. Joint Venture III, L.P.*, 588 F.3d 1312, 1315 (11th Cir. 2009) (per curiam).

A bankruptcy court's order approving of a compromise or settlement is reviewed for an abuse of discretion. *Daughtrey v. Rivera* (*In re Daughtrey*), 896 F.3d 1255, 1273 (11th Cir. 2018) (citing *Christo v. Padgett*, 223 F.3d 1324, 1335 (11th Cir. 2000)). "This means that a bankruptcy court's approval of a settlement agreement must be affirmed unless the court's decision is (1) completely devoid of minimum evidentiary support or (2) bears no rational relationship to the evidence." *Kenny v. Critical Intervention Servs. Inc. (In re Kenny)*, 630 B.R. 853, 859 (M.D. Fla. 2021) (citation omitted).

The bankruptcy court must consider each of the following factors, known as the *Justice Oaks* factors, to determine whether to approve a settlement:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it;

> (d) the paramount interest of the creditors and a proper
> deference to their reasonable views in the premises.

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990) (citations omitted); *see also SE Prop. Holdings, LLC v. Gaddy Elec. & Plumbing, LLC (In re Gaddy)*, 851 F. App'x 996, 1000 (11th Cir. 2021)[8] (applying the *Justice Oaks* factors).

A district court's "review of a bankruptcy court's application of the *Justice Oaks* factors is quite limited," as the court reverses "only when the bankruptcy court approved a compromise that fell 'below the lowest point in the range of reasonableness.'" *See Gaddy*, 851 F. App'x at 1000 (quoting *Martin v. Pahiakos (In re Martin)*, 490 F.3d 1272, 1275 (11th Cir. 2007)). Consequently, the bankruptcy court must simply "make a pragmatic decision based on all [of the] equitable factors." *Kenny*, 630 B.R. at 859 (citing *McMasters v. Kapila (In re Morgan)*, No. 10-60373-CIV-MORENO, 2011 WL 13185742, at *4 (S.D. Fla. Feb. 15, 2011)).

## III.    DISCUSSION

As an initial matter, Mr. Kanter asserts that the Bankruptcy Court abused its discretion by reaching the *Justice Oaks* factors since Herborn "did not have an unsecured claim in the first instance." (Doc. 21, p. 16). This stance is supported, entirely, by Mr. Kanter's arguments regarding the merits of Herborn's underlying

---

[8]    "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

claim. (*See id.* at pp. 16–20). However, Mr. Kanter provides no legal support for the notion that a bankruptcy court should determine, as a threshold matter, that a creditor's claim has merit before applying the *Justice Oaks* factors. (*See id.*); *cf. Justice Oaks*, 898 F.2d at 1549 (holding that the bankruptcy court "never had to *decide* the merits" of the claims at issue in approving the settlement thereof, and that it only had to assess the creditors' "*probability* of succeeding on those claims"). The Court is not persuaded by Mr. Kanter's argument, which expressly contravenes the Eleventh Circuit's analysis in *Justice Oaks*. *See* 898 F.2d at 1549. The Court thus considers the Bankruptcy Court's application of each of the *Justice Oaks* factors in turn.

### A.    Probability of Success in the Litigation

The Bankruptcy Court found that the first *Justice Oaks* factor, concerning the probability of success in litigation, "slightly" weighed in favor of approving the Settlement. (Doc. 11-2, p. 4). First, it noted that Herborn intended to appeal its rulings denying his Timeliness Defense. (*Id.*). Although the Bankruptcy Court found it was "more probable" than not that the Liquidating Agent would prevail on his Objection to the Herborn Claim, it also emphasized that, if Herborn won an appeal as to his Timeliness Defense, Herborn's $1,500,000.00 claim would be allowed *in full*. (*Id.*). Second, the Bankruptcy Court found that it was unclear whether the Liquidating Agent would win the newly filed Adversary Proceeding against Herborn but highlighted that it involved "fact-intensive causes of action" that would likely proceed to trial. (*Id.* at pp. 4–5). Finally, while the Bankruptcy

Court found it more likely that the Liquidating Agent would prevail in prosecuting the settlements of the Law Firm Claims, it also considered that he "would have to litigate the substance of the objections" as to any such claim that was not approved. (*Id.* at p. 5). The Bankruptcy Court noted the individual Law Firm Claims were "separate and distinct" and explained that the issues these claims raised, including "corporate authority, the amount of the claim, extent of services rendered to the Debtor, [and] charging liens" would "likely require trials on each claim." (*Id.*). Thus, the Bankruptcy Court considered that the Settlement would "alleviate the need to proceed to trial, and the uncertainty attendant in litigation." (*Id.*).

Mr. Kanter's arguments concerning how the Bankruptcy Court abused its discretion as to this factor are largely based upon his position that the Herborn Claim lacks merit. (*See* Doc. 21, pp. 16–24). For example, Mr. Kanter argues that "the probability of success on the Herborn Objection is 100%." (*Id.* at p. 21). More precisely, Mr. Kanter asserts that the statute upon which the Herborn Claim rests was enacted after the alleged improper distributions and does not apply retroactively.[9] (*Id.*). Similarly, Mr. Kanter posits that the amount of Herborn's claim is "illogical," that the Liquidating Agent's investigation into the claim was

---

[9]   Mr. Kanter contends that the Herborn Claim was brought under Florida Statute § 605.0404, but asserts that, prior to 2015, "the operative Florida Statute governing [LLCs] was Fla. Stat. Ch. 608," which "contained no corollary statutes or remedy as found in § 605.0404." (Doc. 21, pp. 18–19).

"superficial," and argues, without citation to a legal source, that the claim should be time-barred.[10] (*Id.* at pp. 22–23).

However, in applying the *Justice Oaks* factors, the bankruptcy court is not required to assess the merits of the settled claims and must only consider the probability of those claims' success. *See Justice Oaks*, 898 F.2d at 1549; *Kenny*, 630 B.R. at 859; *Romagosa v. Thomas*, No. 6:06-CV-301-ORL-19JGG, 2006 WL 2085461, at *5 (M.D. Fla. July 25, 2006), *aff'd*, 236 F. App'x 498 (11th Cir. 2007). In performing this task, the bankruptcy court is simply required to ensure that the settlement does not "fall below the lowest point in the range of reasonableness." *Martin*, 490 F.3d at 1275. "To do so, the bankruptcy judge has only to canvass the issues." *Kenny*, 630 B.R. at 861 (citing *Ramagosa*, 2006 WL 2085461, at *5).

Here, the Bankruptcy Court canvassed the issues, noting particular issues that would require extensive litigation with attendant uncertainty. (*See* Doc. 11-2, pp. 4–5); *Chira v. Saal (In re Chira)*, 567 F.3d 1307, 1312–13 (11th Cir. 2009) (holding that the bankruptcy court did not abuse its discretion by approving a settlement agreement after noting the "uncertainty surround[ing]" the potential claim); *Christo*, 223 F.3d at 1336 (affirming the bankruptcy court's approval of a settlement and reasoning that, "[e]ven if the likelihood of [appellee] succeeding in his claim . . . was slight, the bankruptcy court correctly noted that defense of any

---

[10]   The Court notes that various counterpoints to the arguments raised by Mr. Kanter are addressed within the Motion to Approve Settlement, including that Mr. Kanter's arguments under Florida Statute § 605.0404 have never been decided by a Florida court and that the Herborn Claim is supported by persuasive authority. (Doc. 11-169, p. 7).

litigation, even that which is frivolous, is both time-consuming and costly"). Simply put, the Bankruptcy Court's thoughtful application of this factor demonstrates that it did not abuse its discretion. (*See* Doc. 11-2, pp. 4–5).

Mr. Kanter's arguments additionally overlook the Bankruptcy Court's express agreement with Mr. Kanter that it was "more probable" that the Liquidating Agent would *prevail on his Objection to the Herborn Claim*. (*See* Doc. 11-2, p. 4). It was, therefore, the additional considerations identified by the Bankruptcy Court that persuaded it to find that this factor slightly weighed in favor of settlement. (*See id.*).

Mr. Kanter likewise ignores the countervailing consideration identified by the Bankruptcy Court as to the Herborn Claim—specifically, that Herborn could prevail on his appeal regarding his Timeliness Defense. (*See id.*). In its Order Denying Reconsideration regarding this defense, the Bankruptcy Court openly "acknowledge[d] that there are courts that would interpret the language in the [Agreed] Order to refer to the date the order was signed." (Doc. 11-151, p. 3). Put differently, the Bankruptcy Court recognized that some courts would agree with Herborn that the Liquidating Agent's Objection to Herborn's Claim should be denied as untimely. (*Id.*). This supports the Bankruptcy Court's stated concern that, if it rejected the Settlement and Herborn prevailed in his appeal, his $1,500,000.00 claim would be allowed in its entirety. (Doc. 11-2, p. 4); *see Justice Oaks*, 898 F.2d at 1553 ("Under the Bankruptcy Code, 'a claim . . . is deemed allowed, unless a party in interest . . . objects.'" (quoting 11 U.S.C. § 502(a))). Under

the circumstances, Mr. Kanter has not demonstrated that the Bankruptcy Court abused its discretion in applying the first *Justice Oaks* factor. *See Daughtrey*, 896 F.3d at 1273.

### B.   Difficulties in Collection

The Bankruptcy Court found the second factor—the "difficulties, if any, to be encountered in the matter of collection"—to be neutral. *See id.*; (Doc. 11-2, p. 5). It noted that the Liquidating Agent did not take this factor into consideration and that there was no evidence presented on whether a judgment against Herborn would be collectible. (Doc. 11-2, p. 5). Mr. Kanter does not address this *Justice Oaks* factor in his argument. (Doc. 21); *see also Kenny*, 630 B.R. at 861 ("The 'difficulties in collection' factor is not dispositive on whether a settlement is reasonable." (collecting sources)). Therefore, the Court does not find that the Bankruptcy Court abused its discretion in applying this factor.

### C.   Complexity of the Litigation and the Expense, Inconvenience, and Delay Necessarily Attending It

The Bankruptcy Court found that the third *Justice Oaks* factor, the complexity of the litigation and the expense, inconvenience, and delay necessarily attending it, weighed in favor of approving the Settlement. (Doc. 11-2, p. 5). First, it cited that the issues involved in the claims were complex. (*Id.*). Next, it considered that some of the creditors had been waiting for five years to be paid, and that its approval of the Settlement would allow for immediate payment to all

but one creditor.[11] (*Id.*). Conversely, the Bankruptcy Court estimated that litigating the claims at issue would "take more than a year." (*Id.* at pp. 5–6). Finally, the Bankruptcy Court cited that expert witness R. Scott Shuker ("**Mr. Shuker**") had testified at trial that "the legal fees associated with further litigation would be $740,000." (*Id.* at p. 6). The Bankruptcy Court expressly found that "Mr. Shuker's testimony was credible" and noted "the Settlement would avoid the legal fees associated with litigating the multiple matters at issue." (*Id.*). To borrow Mr. Kanter's phrasing, the Bankruptcy Court ultimately found that it would be "cheaper to settle than litigate." (*See* Doc. 21, p. 25).

Mr. Kanter asserts that the Bankruptcy Court abused its discretion in applying this factor and argues that "the cost estimates and expert testimony were not accurate or convincing." (*Id.*). Specifically, Mr. Kanter posits that Mr. Shuker failed to consider that the four objections to the Law Firm Claims each "revolved around one key issue—*Whether the Liquidating Agent had authority to settle the Law Firm claims*." (*Id.*). Mr. Kanter further argues that he has personally "offered to bear the entire cost of any litigation currently pending or threatened by the Liquidating Debtor of Herborn." (*Id.* at pp. 26–27).

---

[11]   The Bankruptcy Court noted that the creditor as to the Bloodworth Claim could not be paid upon its approval of the Settlement at issue here, as Mr. Kanter had separately objected to the Liquidating Agent's motion to approve the settlement of the Bloodworth Claim. (Doc. 11-2, pp. 5–6 n.19). The Bankruptcy Court subsequently entered an Order approving of the Liquidating Agent's settlement of the Bloodworth Claim, and that Order is presently on appeal to the instant Court in Case Number 6:23-cv-02329-PGB.

Mr. Kanter's arguments fail. First, unlike the Bankruptcy Court, this Court did not have the opportunity to perceive Mr. Shuker's testimony firsthand. *See Romagosa*, 2006 WL 2085461, at *3 (noting that, in a bankruptcy appeal, "findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." (citing *SouthTrust Bank of Ala., N.A. v. Thomas (In re Thomas)*, 883 F.2d 991, 994 (11th Cir. 1989), *cert. denied*, 497 U.S. 1007 (1990))). The Court thus defers to the Bankruptcy Court's determination that Mr. Shuker's testimony was credible in the absence of a "definite and firm conviction that a mistake has been committed." *Id.* (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *accord Daughtrey*, 896 F.3d at 1273.

The Court does not have a "definite and firm conviction" that such a mistake was made here. *See Romagosa*, 2006 WL 2085461, at *3. First, the claims at issue are undoubtedly complex. *See* discussion *supra* Section I.A–C. Moreover, as the Liquidating Agent noted in the Motion to Approve Settlement:

> [In the absence of the Settlement, **t]he Court would have to address novel legal issues, some of which remain unresolved in the Kanter Litigation after nearly a decade – and even if resolved in that action would not necessarily be binding upon the parties in the Contested Matters. . . . These uncertain legal questions would require extensive research of case law across numerous jurisdictions and inject a high degree of uncertainty into determining a likely outcome absent full-throttled litigation.** This necessary work will dim[in]ish the available resources of the estate and even if successful could result in expenses that are equal to or

greater than the Settlement Amount when combined with the anticipated discovery, dispositive motions, expert witnesses, and trial. **This expense would be amplified by a factor of seven given there are the six pending, and one threatened, Contested Matters – without even considering the costs of appeals. This devastation to the estate's assets would thereafter be magnified to an even greater extent – as both the Debtor and the Liquidating Agent would be drawing from the estate's assets to fund the various battles.** The Liquidating Agent must therefore not only consider the cost of litigating one matter, but really a cost that is over a dozen times that amount, as all but one of the Contested Matters would involve both the Debtor and the Liquidating Agent drawing from the estate assets for their respective legal fees.

(Doc. 11-169, pp. 9–10). The Court finds this argument compelling. It also finds that the record supports Debtor Huckleberry's assertion in his Response Brief that "the parties have demonstrated that they are extremely litigious and will object to and fight about each and every issue imaginable." (Doc. 26, p. 27).

Additionally, the Court concurs with the Bankruptcy Court's finding that the Law Firm Claims contain copious distinct issues requiring individual determination. (Doc. 11-2, p. 5); *see* discussion *supra* pp. 7–8. This would naturally increase the expected costs associated with litigating these claims. Moreover, Mr. Kanter's argument to the contrary oversimplifies the diversity of the objections that have been raised to the settlements of the Law Firm Claims. (*See* Docs. 11-162, 11-163, 11-165, 11-166).

Lastly, while Mr. Kanter cites to his offer to personally fund the litigation necessitated by a rejection of the Settlement, this does not move the needle. In discounting this offer, the Bankruptcy Court noted that the offer was not raised until Mr. Kanter included it within a Reply he filed after the close of the evidence

in the trial. (Doc. 11-2, pp. 1, 6). Thus, the Bankruptcy Court determined that there was "no evidence of whether [Mr. Kanter's] terms would be acceptable to the Liquidating Agent, or whether the creditors would oppose the Settlement based upon Mr. Kanter's proposal." (*Id*. at p. 6; *see also* Doc. 26, pp. 51–52 (representing that the Liquidating Agent and Debtor Huckleberry were extremely skeptical of Mr. Kanter's offer, in part due to a Final Judgment having been entered against Mr. Kanter for $174,682.98 for unpaid legal fees for services rendered in his bankruptcy case)). Accordingly, Mr. Kanter has not demonstrated that the Bankruptcy Court abused its discretion in finding the third *Justice Oaks* factor favored approving the Settlement.

### D.    Paramount Interest of the Creditors

The Bankruptcy Court found that the fourth *Justice Oaks* factor, the paramount interest of creditors, weighed in favor of approving the Settlement. (Doc. 11-2, p. 6). The Bankruptcy Court noted that Mr. Kanter was not a creditor and that he was the sole party who objected to the Settlement.[12] (*Id*.). It additionally considered that the approval of the settlements of the Law Firm Claims would "result in a negotiated reduction" of those claims "as well as the ability to make distribution to creditors immediately." (*Id*.). Mr. Kanter did not broach this *Justice Oaks* factor in his argument and the Court does not find that the Bankruptcy Court abused its discretion as to this factor. (*See* Doc. 21); *Kenny*,

---

[12]   Mr. Kanter had asserted a claim in the bankruptcy case, but it was later disallowed by the Bankruptcy Court. (Doc. 11-144).

630 B.R. at 863 ("[T]he lack of objection from any creditor weighs in favor of finding that the settlement is in the creditors' best interest." (citation omitted)). As a result, this Court does not find that the Bankruptcy Court abused its discretion in applying the fourth *Justice Oaks* factor here.

### E.   "Other Significant Considerations"

Finally, Mr. Kanter argues that the Bankruptcy Court abused its discretion in allegedly declining to consider additional matters falling outside of the *Justice Oaks* factors, including the "integrity of the . . . bankruptcy process" and the notion that there should be heightened scrutiny of a settlement with an "insider." (Doc. 21, p. 28).[13] Mr. Kanter argues that the "entire settlement is rife with insider manipulation and improper conduct by fiduciaries of the Court." (*Id.* at p. 30). In support, Mr. Kanter cites to actions purportedly taken by Debtor Huckleberry that he appears to believe demonstrate Debtor Huckleberry was looking out for *Herborn's* bottom line. (*See id.* at p. 29).

However, this potential conflict of interest is precisely why the Liquidating Agent was appointed to oversee matters such as the instant Settlement. (Doc. 11-17, p. 4). Indeed, Mr. Kanter impliedly agreed that the appointment of the Liquidating Agent for Debtor Huckleberry had resolved his concerns in this regard,

---

[13]   Mr. Kanter cites to a number of non-binding cases from outside of the Eleventh Circuit in support of these considerations. (*See* Doc. 21, pp. 28–29 nn.3–4). However, to the extent that the Court agrees that these are worthy considerations in any legal matter, it briefly addresses Mr. Kanter's concerns.

as Mr. Kanter apparently did not renew his objection to the Plan after the Modification appointing the Liquidating Agent was filed. (*See* Doc. 11-17).

Thus, it was the Liquidating Agent's job to determine a settlement offer concerning matters to which Herborn had a conflict of interest was fair and appropriate before accepting. (*Id.* at p. 4). The fact that Debtor Huckleberry also supported approval of the Settlement is irrelevant absent evidence that the *Liquidating Agent*—who was to act as a "check" on the Herborn conflict of interest—was compromised in his role. (*See id.*). The most direct evidence Mr. Kanter provides as to this point is his statement that "[s]ome evidence at the Evidentiary Hearing[14] revealed that it was really the Debtor that filed the [Motion to Approve Settlement,] albeit under the auspices of the Liquidating Agent." (Doc. 21, p. 30). Yet, Mr. Kanter neither elaborates on what evidence supports this assertion, nor does he provide any record citation. (*Id.*).

Absent more concrete evidence that *Herborn's* purported conflict of interest swayed the *Liquidating Agent's* judgment, the Court does not find that the Bankruptcy Court abused its discretion by approving the Settlement here. Accordingly, because the Court finds that the Settlement did not "fall below the lowest point in the range of reasonableness," the Bankruptcy Court's Order Approving the Settlement (Doc. 11-2) is affirmed. *See Martin*, 490 F.3d at 1275.

---

[14] The Court presumes that by citing to an Evidentiary Hearing, Mr. Kanter is referring to the trial on the Motion to Approve Settlement; however, it cannot be sure, as Mr. Kanter does not provide a record citation. (*See* Doc. 21, p. 30). In any event, the precise proceeding to which Mr. Kanter refers is not material to the Court's reasoning.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.    The Bankruptcy Court's Order Granting Motion to Approve Compromise of Controversy between Liquidating Agent and H. James Herborn III (Doc. 11-2) is **AFFIRMED**;

2.    The appeal is **DISMISSED**; and

3.    The Clerk of Court is **DIRECTED** to close the case.

**DONE AND ORDERED** in Orlando, Florida on September 27, 2024.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties